## KINNEY & CO. v. FIRST NATIONAL BANK OF ROCK SPRINGS.

### SALES—DELIVERY—EVIDENCE.

1. Upon a sale of chattels, as against third parties, a delivery is sufficient if it be such as the situation of the property admits; and when the chattels are so situated that there can be no immediate delivery, none is required, but it is sufficient if the vendee, without laches, takes possession in a reasonable time after he has an opportunity to do so.

2. The mortgagor of a herd of sheep supposed to number about 7,700 head agreed to sell them to the mortgagee, the latter to credit upon the note and mortgage a certain price per head. At the time and place appointed for transfer of possession it was unexpectedly found that about 1,500 head had strayed away, but the remainder were then delivered and credit given at the agreed rate for that number. The mortgagee immediately instituted search and inquiries for the missing sheep without success. Subsequently, and shortly after the expiration of the mortgage lien, they were located by a judgment creditor of the mortgagor, who caused them to be levied on and

sold under execution. Before and at the time of execution sale the mortgagee gave notice of its ownership and demanded possession. The evidence disclosing that there was a sale of all the sheep, the exact number to be ascertained by a count and credited accordingly, *Held*, that there was a sufficient delivery of the missing sheep to consummate the sale as against the judgment creditor.

3. The mortgagee having sold them to one E., who was appointed as agent to receive them, a remark made by him at time of delivery to the effect that he had only bought from M. (the mortgagor) the sheep that he then received, and so refused to wait until a few others could be obtained, whose location were known, was immaterial and properly excluded from the evidence, since the sale to him was a separate transaction, and he did not represent the mortgagee in the matter of the sale, except to receive the property.

4. Evidence that that mortgagor subsequent to the sale gave to another a mortgage on the missing sheep was properly excluded, it not being shown that the vendee assented to or had notice thereof.

[Decided January 30, 1902.]

ERROR to the District Court, Sweetwater County, HON. DAVID H. CRAIG, Judge.

The bank sued to recover damages for the conversion of certain sheep. On April 6, 1895, to secure a note due in one year, one Edward S. Murray mortgaged to the bank all his sheep, recited to be about 10,500 head. The mortgage was afterwards renewed by filing the statutory affidavit continuing it in force to April 6, 1897. On February 17, 1897, Murray agreed to turn over all the sheep, supposed at that time to be about 7,700, to the bank, and it was to give him credit upon his note and mortgage at the rate of $2.25 a head. On request of the bank, the foreman having them in charge, under instructions from Murray, had the herd at Bitter Creek for delivery on March 12th. Prior to this the bank had sold the sheep to one John G. Edwards and sent him to Bitter Creek on the 12th to receive them. The bank obtained a written order from Murray upon his foreman for the delivery, which was turned over by it to Edwards,

and he, in turn, presented it to the foreman and received the sheep.   Upon a count, it was found that the herd was short about 1,500 and Edwards received only 6,209 head. He paid for these on the 13th, and the bank gave Murray credit for them at the agreed price.   It instituted inquiries and sent men out to search for the remainder, but only nine head, which had strayed into one Draper's band while the herd was being driven to Bitter Creek for delivery, were found in the next few days.   Subsequently, and a month or more after the maturity of the note of Murray to the bank, the plaintiff in error found about 1,000 head of them and had them levied upon and sold under executions against Murray, plaintiff in error being the purchaser at the sale. Prior to this sale the bank gave notice to plaintiff in error that they belonged to it and demanded possession of them. Subsequently, the bank brought this suit and then gave Murray credit for the number sold under execution by plaintiff in error at the agreed price of $2.25 per head.

*John H. Chiles* and *John W. Lacey,* for plaintiffs in error.

The mortgage of plaintiff had ceased to be of any force as against the execution.   (Bank v. Ludvigsen, 8 Wyo., 230.) The case for the plaintiff below, therefore, rested on the averments that the mortgagor agreed upon request to deliver to the mortgagee and the latter might take possession of the sheep, credit to be given for the price agreed upon per head, viz., $2.25 for the sheep so taken possession of; and that, March 12, request for delivery was made and all but the sheep in controversy were delivered, and that Murray, the mortgagee, abandoned the sheep in controversy to plaintiff. Under the evidence it is contended:

First—That there is no evidence to show ownership of these sheep in the bank.

Second—If it be held that the trend of the evidence as actually received would tend to show that the bank accepted the sheep here in controversy, as well as those for which it gave credit, then the declaration of the authorized agent of

the bank at the time, to the effect that these sheep were not part of those accepted, was admissible as showing that the title to these sheep did not pass, the same not having been accepted, but having been actually refused by the bank. The filing of a mortgage by Mr. Murray was competent evidence, especially competent under the averment in the petition and its denial in the answer, that Murray had abandoned these sheep to the bank, there having been no acts of ownership on the part of the bank.

There was no evidence that these particular sheep were delivered to or accepted by the bank at any time prior to the levy, nor at any time prior to the institution of this suit. Indeed, the contrary is alleged, as we have seen, in the petition filed by the bank and upon which this case was tried.

*D. A. Reavill* and *N. E. Corthell,* for defendant in error.

"The best construction which can be given to the evidence favorable to the defendants below shows a conflict in the testimony; and there being evidence to sustain the finding, the judgment will not be reversed." (Hester v. Smith, 5 Wyo., 295; Edwards v. Murray, 5 id., 157; Hood v. Smiley, 5 id., 70; Rainsford v. Massengale, 5 id., 1; Jackson v. Mull, 6 id., 55; Boberg v. Prahl, 3 id., 325; Ketchum v. Davis, 3 id., 164; O'Brien v. Fogelsong, 3 id., 57; Edwards v. O'Brien, 2 id., 494; Fein v. Tonn, 2 id., 117; Hilliard F. & L. v. Woods, 1 id., 411.)

If the plaintiff, holding a mortgage of the converted property, took possession before the conversion, its rights were perfected and secured, and it would not matter whether there was a default in renewing the mortgage or not; even if not recorded at all, or although defectively executed, the mortgage would be good under such circumstances. (Jones on Chat. Mort., 176 et seq.; Bowdish v. Page, 81 Hun, 170; Barton v. Sitlington, 128 Mo., 164; Gaar, Scott & Co. v. Hurd, 92 Ill., 315; Dayton v. Sav. Bk., 23 Kan., 421.) If the mortgagee, without taking possession and without filing an affidavit for renewal, merely gives notice of foreclosure,

the mortgage continues in force.   (L. 1890-1, p. 89, Sec. 11.)

Even in those states where the mortgagee is held to the strictest diligence in taking possession on default, he is not required to do impossible or impracticable things.  He must take possession or use reasonable diligence in the effort so to do.  (Travis v. McCormick, 1 Mont., 148, 347.)  Mortgage or no mortgage, the parties had the power and the right to cancel the debt by transfer of the property.

That which is possible, natural and usual, having regard to the situation of the parties and the situation and character of the property, is what the law expects and what is meant by "change of possession."  Impossible things are never required; unnatural and unusual acts, so far from being essential, excite suspicion and call for explanation; and there is a trinity of fitness in time, place and circumstance, which cannot be more particularly described because of the very universality of the law and the infinite variety of fact, but which accommodates itself unmistakably to all possible conditions, as is well illustrated in the following cases:  (Morse v. Powers, 17 N. H., 289; Patrick v. Meserve, 18 N. H., 300; Ricker v. Cross, 5 N. H., 570; Dodge v. Jones, 7 Mont., 121; Bump on Fraudulent Conv., 151, 155; Lathrop v. Clayton, 45 Minn., 124; B. & L. Ass'n. v. Bolster, 92 Pa., 129; Taylor v. Thurber, 68 Ill. App., 114; Rice v. Austin, 17 Mass., 204; Gear v. Hurd, 92 Ill., 315; Goodwin v. Goodwin, 90 Me., 23; Adams M. Co. v. Senter, 26 Mich., 73-79; Carpenter v. Graham, 42 Mich., 191; Morrison v. Orium, 3 N. D., 76; Morse v. Sherman, 106 Mass., 433; Wright v. Tetlow, 99 Mass., 397; Nash v. Ely, 19 Wend., 523; Bates v. Conkling, 10 Wend., 389; Wheeler v. Nichols, 32 Me., 240; Porter v. Bouchier, 98 Cal., 454; Williams v. Lerch, 56 Cal., 333; Cady v. Zimmerman (Mont.), 30 P., 553; Budd v. Power, 9 Mont., 99; Walden v. Murdock, 23 Cal., 540; Nat. Bk. v. Day, 87 Tex., 101; O'Gara v. Lowry, 5 Mont., 427; Loeb v. Crow (Tex. Civ. App.), 40 S. W., 506; Bell v. McClosky, 155 Pa. St., 319; Fry v. Miller, 45 Pa. St., 441; Morrow v. Reed, 30 Wis., 81; Weiland v. Pot-

ter, 6 Colo. App., 451; Briggs v. U. S., 143 U. S., 346; Gibson v. Stephens, 8 How., 384; Russel v. Carrington, 42 N. Y., 118; Hecht v. Johnson, 3 Wyo., 279; Murphy v. Braase (Ida.), 32 P., 208; Lufkins v. Collins, 2 Ida., 135, 234; Nat. Bk. v. Davidson, 18 Ore., 57; Gant v. Broadway (Ariz.), 15 P., 862.)

But delivery was not essential to pass the title from Murray to the bank. When a question arises between a purchaser and a creditor of the vendor as to the *good faith* of a sale, delivery or want of delivery is one of the facts from which, among others, the court or jury may find good faith or bad faith and thence sustain or avoid the sale.

True there are authorities which hold that, as against creditors, retention of possession by the vendor avoids the sale as a matter of law. In most instances these rulings are based upon positive statutes which, in many of the states, establish this rule. In about an equal number of states the statutes establish the rule that want of delivery creates a *prima facie* presumption of fact that the sale is fraudulent.

Of states where the question is not settled by statute, the following hold that the good faith of such a transaction is a question of law: Connecticut, Illinois, Kentucky, Missouri, Pennsylvania, Vermont. (See Benj. on Sales, 775-779.) The following hold it to be a question of fact: Alabama, Arkansas, District of Columbia, Georgia, Florida, Louisiana, Maine, Massachusetts, New Hampshire, New Jersey, Ohio, Rhode Island, Texas, Virginia, West Virginia. (See Benj. on Sales, 775-779; Smith v. Jones, 63 Ark., 232; Justh v. Wilson, 19 D. C., 529; Scott v. Winship, 20 Ga., 430; Briggs v. Weston, 36 Fla., 629; Keller v. Blanchard, 19 La. Ann., 53; Nat. Bk. v. Day, 87 Tex., 101; Bindley v. Martin, 28 W. Va., 792; Davis v. Turner, 4 Gratt., 423.) And this is the English rule, as well as the rule of the Federal courts. (Benj. on Sales, 409; Warner v. Norton, 20 How., 460; Smith v. Craft, 123 U. S., 436.)

And transactions similar to the one under consideration have been upheld indifferently in states where either rule is

recognized by statute or judicial decision. (Kenton v. Ratcliff (Ky.), 49 S. W., 14; Haines v. McKinnon (Ore.), 57 P., 903; Downey v. Taylor (Tex.), 48 S. W., 541; Irvin v. Edwards, 47 S. W., 719; Patrick v. Meserve, 18 N. H., 300.)

Therefore, even if fraud were alleged in this case, the finding of the court would be conclusive and unquestionable (as indeed the evidence is) upon this question. But no fraud is alleged; the good faith of the transfer is not questioned; and it is, therefore, quite immaterial for the purposes of the decision whether there was a delivery or not.

No declarations made by Murray were competent against his vendee. (Toms v. Whitmore, 6 Wyo., 220; Murphy v. Braase (Ida.), 32 Pac., 208.) The declarations of Edwards as to the sheep he had purchased had reference only to his individual purchase and did not relate to the deal between Murray and the bank; and it was not an admission within the scope of his agency.

CORN, JUSTICE (after stating the facts as above).

There is no material disagreement as to the facts of this case, and, in our opinion, there is but one question involved: Was there a sale and delivery of the mortgaged property by the mortgagor to the mortgagee, such as would pass title to it as against an execution creditor of the mortgagor?

That there was a contract of sale by which the bank was to receive all the mortgaged sheep, supposed to be about 7,700 head, and give the mortgagor, Murray, credit upon his indebtedness at the agreed rate per head, there can be no question under the evidence. The parties undertook to perfect this sale by an actual delivery of the entire herd. Murray directed his foreman to drive the herd to the place designated for delivering them, and the bank sent Edwards to the same place with authority to receive them for it. At the same time Murray gave to the bank a written order upon his foreman, directing him to turn them over to Edwards, and the order was handed to Edwards by the bank. This paper was lost and the foreman and Gildersleeve, who obtained it for the

bank, differ in their testimony as to its wording. The fore-
man testifies "it said to turn what sheep I had in my posses-
sion over to John G. Edwards and to take a receipt for them."
Gildersleeve states that its language, as nearly as he can re-
member, was: "Deliver to J. G. Edwards all my sheep,
keeping track of number turned over, and report count to
me." But the precise terms of the order are not material,
from the fact that at the time it was given all parties con-
cerned supposed that substantially the entire herd, consisting
of about 7,700, was in the possession, or under the control,
of Murray's foreman. Gildersleeve, the assistant cashier of
defendant in error, testifies that Murray told him prior to
the delivery that he thought some had strayed and he would
probably find them in a few days. The evidence shows that
it was a wild and uninhabited country there, and that it was
not unusual for small bands to stray away from the herds.
But that this large number had strayed was only discovered
when they were counted out to Edwards. Even the foreman
was ignorant of it, except as to eight or nine head which had
gotten mixed with the Draper herd in driving them to the
place of delivery. And it is clear from the evidence that
both Murray and the bank expected that he would turn over
and it would actually receive substantially the entire herd of
about 7,700, on the 12th of March, at Bitter Creek.

That the property passed as between the mortgagor and
the mortgagee is, therefore, clearly proven, and the only ques-
tion to be determined is whether there was a sufficient de-
livery with respect to third persons.

The well established rule is that it is enough if the delivery
be such as the situation of the property admits. And when
chattels are so situated that there can be no immediate de-
livery, the law requires none; and it is sufficient if the vendee
without laches takes possession in a reasonable time after he
has an opportunity to do so. (Benjamin on Sales (Bennett's
Ed.), 659; Ricker v. Cross, 5 N. H., 570; 14 Am. & E.
Ency. (2nd Ed.), 382.) The rule is illustrated by the sale of a
ship at sea or its cargo. If possession is taken within a rea-

sonable time after their arrival it is sufficient.   In Ricker v. Cross *supra* a debtor transferred to the plaintiffs certain personal property, including a chaise and harness, for their benefit as creditors.   The chaise and harness were in possession, at a distance, of a person who had hired them, but the remainder was delivered in the name of the whole.   An attachment was levied upon them while in the possession of the hirer on his way to the place where he hired them.   It was held that the plaintiffs were entitled to hold them against the officer.

We think the facts bring this case quite clearly within the rule.   There was an attempt upon the part of Murray to deliver, and of the bank to receive, possession of all the property on the day appointed for the transfer.   The small number which had become mixed with the Draper herd were reclaimed a few days afterwards.   Gildersleeve testifies that he made inquiries at once in regard to the missing part of the herd, and on March 25th sent out two men, who searched for them about a week, and the search was then discontinued, principally on account of stormy weather.   When they were found and levied upon by plaintiff in error the bank notified plaintiff in error that they were its property and at the sale gave formal public notice of the fact and demanded possession of them.

It is contended that the fact that the plaintiff only credited the mortgagor on March 12th with the number actually received at that time, is proof that it only purchased from him that number.   But we think the evidence clearly shows that there was a sale of all the mortgaged property, the exact number of sheep to be ascertained by a count and credited accordingly.   But Murray's foreman testifies that when, upon a count of the sheep, they were found to be short, he told Edwards there were some which had gotten mixed with the Draper band, and if he would send a man with him he would go and get them, but that Edwards refused.   The defendant offered to prove further that Edwards' reply was:   "I only bought from Murray the sheep that I receive

here at Bitter Creek." Upon objection by the plaintiff the proffered evidence was excluded. We think the evidence was not material, and that its exclusion was not error. The testimony for the plaintiff shows that the sale to Edwards was a separate transaction and there was no evidence to the contrary. He represented the bank in receiving the property for it, and there is no evidence whatever tending to show that he represented it in any matter connected with the sale of it to him. In regard to that he acted for himself. But it is further contended that, as admittedly, he acted as agent for the bank in receiving the property, his refusal to send for this part of it was a refusal of the bank to accept the delivery of any sheep not in the immediate possession of Murray's foreman and shows that it purchased only those delivered at that time. But admitting that it is competent for that purpose and tends to support that conclusion, yet it only affects the question of the preponderance of the evidence. And the proof is conclusive that a few days afterwards the bank sent for and gathered up the nine head which had strayed into the Draper herd and instituted search for the missing remainder. We do not think, therefore, that the claim of plaintiff in error, that the bank refused, or failed, to accept any part of the herd except what was in the immediate possession of the foreman, is sustained by the evidence. But we think the great preponderance is in favor of the conclusion that it took, or attempted to take, possession of the entire herd as soon as opportunity offered.

There was also an offer by the defendant, plaintiff in error, to prove that Murray gave a mortgage upon the missing sheep to one Mrs. J. W. Roder, upon April 8th, 1897, subsequent to the sale; and it is contended that this evidence was admissible, especially under the averment in the petition and its denial in the answer that Murray had abandoned these sheep to the bank. The averment that Murray at the time of the delivery, and always afterwards, abandoned them to the bank seems to have been intended to meet the requirement of the law in such cases that the

change of possession must be not merely colorable, but actual and continued. But whatever may have been the precise intention of the pleader, we are very clearly of the opinion that this averment cannot have the effect to introduce a new issue into the case and make it a material question whether Murray at some time subsequent to the sale and delivery, undertook to assert ownership and control of the property. There is no intimation of fraud in the transaction between Murray and the bank, and there is no claim that the bank assented to, or had notice of, any attempt of Murray to exercise such control. Consequently, nothing that he may have said or done concerning the property after he parted with it could by any possibility bind the bank or affect its rights in any way. (Toms v. Whitmore, 6 Wyo., 220; 44 Pac., 57.) The evidence was properly excluded. We find no error in the record and the judgment will be affirmed.                                    *Affirmed.*

POTTER, C. J., and KNIGHT, J., concur.